In re MACHINERY, INC., Debtor.

JCB, Inc., Plaintiff,

v.

Union Planters Bank, N.A.
and Machinery, Inc.,
Defendants.

Bankruptcy No. 01–43526–293.
Adversary No. 04–4028.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Nov. 16, 2005.

Brian C. Walsh, King & Spalding LLP, Atlanta, GA, Kevin M. Abel, Bryan Cave LLP, St. Louis, MO, for Plaintiff.

Jeffrey S. Heuer, Blackwell Sanders Peper Martin LLP, for Defendant Union Planters Bank.

Norman W. Pressman, Goldstein & Pressman, for Defendant Machinery, Inc.

Anthony Soukenik, St. Louis, MO, for Debtor.

DAVID P. McDONALD, Bankruptcy Judge.

### MEMORANDUM OPINION

This case is before the Court on JCB's Motion for Partial Summary Judgment. The dispute in this case is which creditor,

JCB or Union Planters, possessed the senior security interest in certain collateral (the "Collateral") owned by the debtor, Machinery, Inc. ("Machinery"). Because the confirmed plan of reorganization (the "Plan") preserved JCB's senior pre-petition purchase money security interest in Debtor's post-confirmation assets, including the Collateral, the Court will grant JCB's motion.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## FACTUAL AND PROCEDURAL BACKGROUND

Viewing the summary judgment record in the light most favorable to the non-movant, Union Planters, the following facts appear from the record. JCB and Machinery entered into a financing arrangement in 1996 whereby JCB financed Machinery's purchase of equipment and parts manufactured by JCB (the "JCB Financing Agreement"). Machinery granted JCB a purchase money security interest in all ". . . equipment, machines, products, attachments and parts manufactured or sold by JCB and all proceeds thereof" to secure its obligation to JCB under the JCB Financing Agreement (the "JCB Security Agreement"). The JCB Security Agreement also contained an after-acquired property clause that gave JCB a purchase money security interest in any property of the type listed in the JCB Security Agreement that Machinery may acquire in the future. JCB properly perfected its security interest contained in the JCB Security Agreement.

Union Planters extended a line of credit to Machinery in March, 2000. Machinery executed a series of promissory notes in favor of Union Planters in exchange for the line of credit. Machinery secured its obligations under the promissory notes by granting Union Planters a security interest in specific items as well as a blanket lien on Machinery's inventory, accounts and proceeds from the inventory, which Union Planters properly perfected. (the "Union Planters Financing Agreement").

Machinery filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on March 29, 2001. Machinery did not execute a new security agreement post-petition in favor of JCB or Union Planters. JCB continued to provide Machinery with post-petition financing to facilitate Machinery's purchase of equipment from JCB. Machinery filed the Plan on August 28, 2001. This Court confirmed the Plan in an order dated October 5, 2001. The Plan contains the following provisions relating to the parties' relative interest in the Collateral.

Concerning the Plan's treatment of JCB's security interest in Machinery's assets, Section 2.11 of the Plan states that JCB possessed a secured claim against Machinery's estate in an amount equal to the value of "Debtor's Equipment on which it holds a purchase money security interest". Sections 3.4.9 and 3.6 of the Plan recited that JCB's claim against Machinery's estate was fully secured in the amount of $456,879.40 and Machinery would pay the claim in full. The Plan further provided in Section 3.4.14.b that all pre-petition documents executed by Machinery shall remain in full force and effect post-confirmation.

With respect to Union Planters' interest in Machinery's assets, Section 3.7 of the Plan gave Union Planters a first priority

secured position in all of Machinery's equipment, except that Union Planters' security interest would be junior to any perfected purchase money security interest in Machinery's assets. Section 3.7 further provides that no party shall hold a security interest in Machinery's post-confirmation assets except for Union Planters and "... any secured creditor, with respect only to specific items and accounts receivable stemming from the sale ... of any collateral on which it holds a properly perfected security interest.".

After the Court confirmed the Plan, JCB continued to provide Machinery with equipment under the terms of the JCB Financing Agreement. And Machinery acquired the Collateral at issue here post-confirmation.

Machinery defaulted on its obligation to its secured creditors under the Plan shortly after confirmation. And in April, 2003 Machinery notified all of its secured creditors, including both JCB and Union Planters, that it was ceasing operations and winding up its business affairs. Machinery surrendered most of the machines that were subject to JCB's security interest (the "Machine Collateral") to JCB on March 10, 2003. JCB placed the Machine Collateral on its lot (the "Lot") and planned to sell the equipment through its dealer system. Machinery also retained some of the Machine Collateral on its real property.

Union Planters, through its agent ATEC, Inc. ("ATEC"), entered upon the Lot on May 12, 2003 and removed the Machine Collateral without the consent of JCB. ATEC also removed several machine parts that were subject to JCB's security interest (the "Parts Collateral") from the Lot. Machinery sold the remaining Machine Collateral to third-parties.

Union Planters notified JCB on June 12, 2003 that it intended to sell the Machine Collateral at a public auction. JCB replied to Union Planters' notification by remitting a letter to Union Planters dated July 15, 2003 demanding that Union Planters not conduct the sale and immediately return the Machine Collateral to JCB. Union Planters refused JCB's demands and ATEC conducted the auction of the Machine Collateral on behalf of Union Planters on July 17, 2003 (the "Public Auction"). The sale of the Machine Collateral at the Public Auction yielded approximately $838,500.00, net of ATEC's fees.

Union Planters also arranged for ATEC to sell the Parts Collateral at a private sale on August 18, 2003. As with the Machine Collateral, JCB demanded that Union Planters immediately deliver the Parts Collateral to JCB in a letter dated July 18, 2003. Union Planters refused JCB's demand and ATEC conducted the private sale of the Parts Collateral on August 18, 2003 (the "Private Sale").

JCB filed the instant adversary proceeding on September 19, 2003. JCB's complaint contains five counts. Count I is a declaratory judgment action requesting the Court to declare that JCB had the senior security interest in the Collateral. JCB contends in Count II that if the Court finds that Union Planters possessed the senior security interest in the Collateral, Union Planters should be required to marshal its other collateral to satisfy its claim against Machinery. JCB argues in Count III that Union Planters failed to dispose of the Collateral in a commercially reasonable manner as required by Mo.Rev.Stat. § 400.9–610. Count IV contains a claim that Union Planters trespassed upon JCB's Lot when Union Planers took possession of the Collateral. Count V is an allegation that Union Planters converted JCB's property interest in the Collateral by refusing to return both the Machine

and Parts Collateral to JCB upon JCB's demand.

Union Planters countered in its answer that it possessed the only security interest in the Collateral under the Plan. Union Planters also asserted a four count counterclaim against JCB. Union Planters requests in Count I that the Court declare that it possessed the senior security interest in the Collateral. Union Planters argues in Count II that JCB converted Union Planters' security interest in the Collateral. Union Planters seeks an accounting from JCB in Count III for any proceeds JCB may have received upon disposing of a portion of the Collateral. Union Planters maintains in Count IV of its counterclaim that JCB failed to provide Union Planters with sufficient notice of JCB's sale or other disposition of a portion of Collateral so that Union Planters is entitled to damages under Mo.Rev. Stat. § 400.9–625.[1]

Union Planters filed a motion for summary judgment arguing that there were no material facts in dispute that the Plan eliminated JCB's security interest in Machinery's post-petition assets, including the Collateral. Union Planters, therefore, contended in its motion for summary judgment that the Plan only provided it with a valid security interest in the Collateral.

This Court denied Union Planters' motion for summary in an order and memorandum opinion dated January 25, 2005 (the "Summary Judgment Order"). The Court disagreed with Union Planters' premise that the Plan only provided it with a valid security interest in the Collateral. Specifically, the Court found that Section 3.4.14.b of the Plan preserved JCB's pre-petition senior purchase money security interest in Machinery's post-confirmation assets, including the Collateral. (Summary Judgment Order, p. 10). Accordingly, the Court held that JCB, not Union Planters, possessed the senior security interest in the Collateral.

JCB filed the instant motion for partial summary judgment on August 19, 2005. JCB maintains in its motion that because the Plan preserved its pre-petition senior purchase money security interest in Machinery's post-confirmation assets, there are no material facts in dispute that it possessed the senior security interest in the Collateral. JCB argues, therefore, that it is entitled to judgment as a matter of law on the issue of liability on Counts I, II, IV and V contained in its complaint and judgment on all of the claims contained in Union Planters' counterclaim.[2]

The Court agrees with JCB that there are no material facts in dispute that it possessed the senior security interest in the Collateral. Therefore, JCB is entitled to judgment as a matter of law on the issue liability on Counts I, IV and V of its complaint and judgment as a matter of law on Union Planters' counterclaim in its entirety.

## DISCUSSION

### A. Introduction

Summary judgment is appropriate under Fed.R.Civ.P. 56, made applicable to this proceeding by Bankr.R. 7056, if the record, viewed in the light most favorable to the non-movant, indicates that there are no material facts in dispute so that the movant is entitled to judgment as a matter of law. *Dixon v. Lowery*, 302 F.3d 857,

---

**1.** Union Planters stated in its response to JCB's motion for summary judgment that it plans to file a motion to dismiss its Counterclaim. Union Planters, however, has yet to file such a motion.

**2.** JCB does not seek summary judgment on Count III of its complaint.

861 (8th Cir.2002). Also, under Rule 56(c), a court may issue judgment as a matter of law on the issue of liability alone even if there is an outstanding factual issue concerning damages. *SEC v. Thrasher,* 152 F Supp.2d 291, 295–96 (S.D.N.Y.2001).

After viewing the record in the light most favorable to Union Planters, the Court finds that there are no material facts in dispute that JCB possessed the senior security interest in the Collateral. Accordingly, the Court will grant JCB's motion on the issue of Union Planters' liability on Counts I, IV and V of its complaint and will grant JCB's motion with respect to Union Planter's counterclaim.

*B. There are no material facts in dispute that JCB possessed the senior security interest in the Collateral.*

■ As stated above, the Court previously determined in the Summary Judgment Order that the Plan gave JCB the senior security interest in Machinery's post-confirmation assets that Machinery purchased under the JCB Financing Agreement, including the Collateral. Union Planters urges the Court to reverse itself and hold that the Plan eviscerated JCB's security interest in any asset Machinery acquired post-confirmation, including the Collateral. The Court declines Union Planters' invitation.

As stated in the Summary Judgment Order, the Court agrees with Union Planters that the Plan governs the parties' respective rights in Machinery's post-confirmation assets. But, as illustrated in the Summary Judgment Order, Union Planters' argument simply ignores Section 3.4.14.b of the Plan, which specifically recites that all of the pre-petition documents executed by Machinery shall remain in full force and effect post-confirmation. In fact, as more fully explained in the Summary Judgment Order, Section 3.7 of the Plan contemplates that pre-petition purchase money secured creditors would hold the senior liens on Machinery's post-confirmation assets. Additionally, there is nothing in the Plan that suggests that Section 3.4.14.b excluded Machinery's pre-petition financing agreements such as the JCB Financing Agreement or the JCB Security Agreement. And none of the cases cited by Union Planters involved language in a plan of reorganization that expressly preserved pre-petition liens with respect to the debtor's post-confirmation assets.

Given this record, the Court finds, as it did in the Summary Judgment Order, that JCB possessed the senior security interest in the Collateral. Thus, JCB is entitled to summary judgment on Count I of its complaint.

*C. JCB is not entitled to equitable marshaling.*

■ JCB contends in Count II of its complaint that the Court should invoke the equitable doctrine of marshaling. JCB asserts in its marshaling claim that if the Court finds that Union Planters had the senior security in the Collateral, Union Planters should be forced to satisfy its claim against Machinery from other collateral. Equitable marshaling, however, can only be invoked to protect a junior secured creditor's interest in a piece of property under both Missouri and federal law. *C.T. Dev. Corp. v. Barnes (In re Oxford Dev., Ltd.),* 67 F.3d 683, 686–87 (8th Cir.1995); *Eisenhart v. Schreimann,* 889 S.W.2d 887, 892 (Mo.Ct.App.1994).

Here, as just pointed out above, JCB possessed the senior security interest in the Collateral. Therefore, the Court need not invoke the doctrine of equitable marshaling to protect JCB's interest in the Collateral. Accordingly, JCB is not entitled to summary judgment on Count II of its complaint.

*D. There is no material fact in dispute that Union Planters trespassed upon JCB's Lot.*

Count IV of JCB's complaint is an action for trespass to land. JCB argues that there are no material facts in dispute that Union Planters trespassed upon the Lot when its agent, ATEC, took possession of the Collateral. The Court agrees.

■ Under Missouri law trespass to land is the unauthorized entry upon the land of another regardless of the amount of force used to gain access to the land. *Rychnovsky v. Cole,* 119 S.W.3d 204, 211 (Mo.Ct.App.2003). Here, there is no dispute that Union Planters entered upon the Lot to repossess the Collateral without JCB's permission. Union Planters contends, however, that it possessed a legal privilege as a junior secured creditor under Article 9 to enter upon the Lot and repossess the Collateral. Union Planter's argument misconstrues the self-help remedies contained in Article 9.

■ There is no doubt that Article 9 gives any secured party, including a junior secured party, the right to enter upon the debtor's real property and take possession of the collateral after the debtor defaults on the underlying obligation. Mo.Rev. Stat. § 400.9–609(a). But the junior secured party's privilege to enter upon real property under § 400.9–609(a) only extends to the real property of the debtor or an entity whose rights in the collateral are derivative of the debtor's rights, such as a lessee. *Tillman v. W.T.S. Farm Lines, Inc.,* 647 F.Supp. 94, 96–97 (E.D.Mo.1986); *Sperry v. ITT Commercial Fin. Corp.,* 799 S.W.2d 871, 876–77 (Mo.Ct.App.1990). In fact, the comments to Revised Article 9 make clear that the senior secured creditor holds a superior right to possess the collateral vis-a-vis a junior secured creditor. Mo.Rev.Stat. § 400.9–609, *Official Comment 5.*

■ Here, there is no dispute that JCB possessed the senior security interest in the Collateral. Therefore, Mo.Rev.Stat. § 400.9–609(a) did not give Union Planters, as a junior secured creditor, the right to enter upon JCB's real property to repossess the Collateral. There is also no dispute that Union Planters entered upon the Lot without JCB's permission. Accordingly, there are no material questions of fact in dispute that Union Planters' entry upon the Lot was unauthorized under Missouri law. Thus, JCB is entitled to summary judgment on the issue of Union Planters' liability on its trespassing claim contained in Count IV of its complaint.

*E. There is no material fact in dispute that Union Planters converted JCB's property interest in the Collateral.*

JCB additionally contends in its motion for partial summary judgment that it is entitled to judgment as a matter of law with respect to Union Planter's liability on its conversion claim contained in Count V of it complaint. The Court agrees.

■ Under Missouri law, conversion is the unauthorized assumption of the right of ownership in personal property to the exclusion of the true owner's rights in the property. *Bell v. Lafont Auto Sales,* 85 S.W.3d 50, 54 (Mo.Ct.App.2002). In the secured transaction context, a plaintiff secured creditor must prove that it had a superior right to immediately possess the collateral at issue. *MFA Inc. v. Pointer,* 869 S.W.2d 109, 111 (Mo.Ct.App.1993). Also, the secured creditor need not proceed against the debtor prior to initiating a conversion claim against the possessor of the collateral at issue, including a junior secured creditor. *Fricke v. Valley Prod. Credit Assoc.,* 778 S.W.2d 829, 833 (Mo.Ct. App.1989).

Union Planters contends that it did not convert JCB's property interest in the Collateral because Union Planters had a right to repossess and sell the collateral as a junior secured creditor. Union Planters relies heavily upon *First Nat'l Bank of Steeleville v. Erb Equip. Co.*, 921 S.W.2d 57 (Mo.Ct.App.1996) to support its argument. The *Erb Equip. Co.* Court held that under the prior version of Mo.Rev.Stat. § 400.9–406, a junior secured creditor has the right to repossess and sell collateral without the permission of the senior secured creditor. *Id.* at 63–64. The senior secured creditor in *Erb Equip.*, however, did not repossess the collateral in question nor demand that the junior secured creditor deliver the collateral to it. *Id.* at 64. As outlined above, there is no dispute here that JCB did repossess the Collateral and did demand that Union Planters return the Collateral to it. Thus *Erb Equip.* is inapposite to the analysis in the instant case.

 The proper analysis must focus on the fact that Article 9 provides a senior secured creditor with the superior right to possess the collateral. Thus, once the senior secured creditor demands that a junior secured creditor deliver the collateral to it, the junior creditor has a duty to comply with the demand. *See e.g. Color Leasing 3, L.P. v. FDIC*, 975 F.Supp. 177, 188 (D.R.I.1997). If the junior secured creditor refuses the senior secured creditor's demand to return the collateral, the junior creditor is liable in conversion to the senior. *Id.* This is the result even if the junior creditor had a good faith belief that it possessed the senior lien on the collateral in questions. *Hill v. Farm Credit Bank*, 726 F.Supp. 1201, 1209–10 (E.D.Mo. 1989). And the Official Comments to Revised Article 9 explicitly state that a junior secured creditor who refuses to surrender possession of collateral to a senior secured creditor upon the senior's demand is liable

in conversion to the senior. Mo.Rev.Stat. § 400.9–609, *Official Comment* 5.

Here, JCB possessed the senior security interest in the Collateral. And there is no dispute that JCB took possession of the Collateral and made a demand upon Union Planters to return both the Machine Collateral and the Parts Collateral to it. Accordingly, the Court finds that Union Planters converted JCB's superior property interest in the Collateral under Missouri law. Therefore, JCB is entitled to judgment as a matter of law with respect to the issue of liability on its conversion claim contained in Count V of its complaint.

*F. There are no material facts in dispute that JCB is entitled to judgment as a matter of law with respect to Union Planters' counterclaim.*

JCB additionally maintains in its motion that it is entitled to judgment as a matter of law on Union Planters' counterclaim. Counts I, II & III in Union Planters' counterclaim assumes that it possessed the senior lien in the Collateral. Because that assumption is incorrect, JCB is entitled to summary judgment on those counts. Further, the undisputed evidence adduced in the summary judgment record indicates that Machinery, not JCB, disposed of the Collateral that ATEC did not sell at either the Public Auction or Private Sale. Thus, there is no material question in dispute that JCB is not subject to damages for improperly disposing of the Machine Collateral under Mo.Rev.Stat. § 400.9–625(b) as Union Planters alleges in Count IV of its counterclaim.

After reviewing this record in the light most favorable to Union Planters, the Court finds that there are no material facts in dispute that JCB is entitled to judgment as a matter of law on Union Planters' counterclaim. Accordingly, the Court will grant JCB's motion for sum-

mary judgment with respect to Union Planters' counterclaim.

## CONCLUSION

The Plan preserved JCB's pre-petition senior purchase money security interest in Machinery's post-confirmation assets that Machinery acquired pursuant to the JCB Financing Agreement. There is no dispute that Machinery acquired the Collateral post-confirmation and pursuant to the JCB Financing Agreement. Therefore, there are no material questions in dispute that JCB possessed the senior security interest in the Collateral. JCB, therefore, is entitled to summary judgment on Count I of its complaint.

Additionally, because JCB possessed the senior security interest in the Collateral, it held the superior right to possess the Collateral as well. Accordingly, Union Planters was under an obligation to return the Collateral to JCB upon JCB's demand and Union Planters had no right to enter upon the Lot to repossess the Collateral from JCB. Therefore, there is no material question of fact in dispute that JCB is entitled to judgment as a matter of law with respect to the issue of Union Planter's liability on its trespass and conversion claims contained in Counts IV and V of its complaint. Accordingly, JCB is entitled to summary judgment on its complaint with respect to the issue of Union Planters' liability on Counts I, IV and V of its complaint.

Further, because JCB possessed the senior security interest in the Collateral, JCB is entitled to judgment as a matter of law on Counts I, II and III of Union Planters' counterclaim. JCB is also entitled to judgment as a matter of law on Count IV of Union Planters' counterclaim because the undisputed evidence demonstrates that JCB did not dispose of the Machine Collateral. Therefore, JCB is en-

titled to summary judgment on Union Planters' counterclaim in its entirety.

An Order consistent with this Memorandum Opinion will be entered this date.